2020 IL App (1st) 170740-U

No. 1-17-0740

Order filed February 6, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 15204 |
| | ) | |
| ROBERT KELLY, | ) | Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant's conviction for aggravated discharge of a firearm in the direction of an occupied vehicle is affirmed where the State presented sufficient evidence of defendant's guilt under a theory of accountability.

¶ 2     After a bench trial, the trial court found defendant Robert Kelly guilty of aggravated

discharge of a firearm in the direction of an occupied vehicle under a theory of accountability

and sentenced him to four years' imprisonment. On appeal, defendant argues that the evidence

failed to prove his accountability for the offense beyond a reasonable doubt. For the following reasons, we affirm.

¶ 3     An indictment charged defendant and Shaquan Griffin with six counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014)), one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2014)), and one count of aggravated discharge of a firearm in the direction of an occupied vehicle (720 ILCS 5/24-1.2(a)(2) (West 2014)). Both defendants were tried simultaneously.[1]

¶ 4     At trial, Rashad Jackson[2] testified that early on July 20, 2014, he was at the lakefront with his sister, Kinesha Jackson,[3] his cousin Christian Johnson,[4] and defendant. Rashad denied drinking alcohol or feeling intoxicated while there. At some point, Rashad drove to his friend's home on the 8600 block of Burnham Avenue. Rashad parked and went inside the home, where he had a "[h]ostile" interaction with defendant. Rashad then went outside and talked to Johnson and Kinesha on the street. Thereafter, defendant came outside "cracking his knuckles" and saying he "wanted to fight." Defendant and Johnson started fighting, and when they separated, defendant picked up a flowerpot and tried to throw it at Johnson. Rashad stopped defendant from throwing the flowerpot and fought with defendant. After they punched each other, defendant said, "I'll be back," and drove away in a gray Montecarlo, which Rashad had seen him drive before.

_____

[1] Griffin was found not guilty of attempt first degree murder and guilty of aggravated battery with a firearm and aggravated discharge of a firearm in the direction of an occupied vehicle. He is not a party to this appeal.

[2] Rashad testified that he was in custody on a probation violation after pleading guilty to failure to report an accident involving death. He denied that the prosecutor made any promises about that case based on his testimony in this matter.

[3] Because Rashad and Kinesha have last names in common, we refer to them by their first names.

[4] Johnson is also referred to as Christian Jackson in the record.

¶ 5    Rashad wanted to leave before defendant returned, and started to drive away. As he did so, defendant's vehicle exited an alley onto Burnham. Rashad drove the wrong way down Burnham towards Johnson and Kinesha to pick them up. Rashad then saw defendant exit from the passenger seat of his vehicle and he saw Griffin exit the driver's seat. Rashad started to exit his vehicle, and he heard defendant say to Griffin, "there he go, right there." Griffin then raised a firearm and pointed it in Rashad's direction. Rashad jumped in his vehicle, reversed down the street, and heard three gunshots.

¶ 6    On cross-examination, Rashad testified that on the day of the shooting he gave a statement to the State's Attorney and a detective. In his statement, Rashad said he had one beer while at the lake, but at trial, Rashad testified that he had the beer prior to going to the lake. Rashad's statement did not include that he prevented defendant from throwing a flowerpot, that defendant exited the Montecarlo after driving from the alley onto Burnham, or that defendant pointed Rashad out to Griffin. Rashad also explained at trial that he and defendant argued that day because Rashad told defendant that he did not want to hang out with defendant anymore. After this argument, defendant went onto the roof of the house before joining Rashad on the street. On redirect examination, Rashad testified that "[n]ot even a minute" passed from the time defendant pointed him out to Griffin and the time that he heard gunshots.

¶ 7    Kinesha testified that when she arrived at the home on Burnham, defendant was on the roof, Rashad was in the street, and she heard yelling. Kinesha remained in her vehicle on her phone and watched defendant and Rashad fight after defendant came down onto the street. From inside her vehicle, Kinesha heard defendant say, "I'll be back" before leaving in a gray Montecarlo.

¶ 8 Rashad started to drive away in his own vehicle, but turned around when defendant's vehicle approached Kinesha's vehicle. Kinesha watched in her driver's side mirror as Griffin exited the Montecarlo's driver's seat, yelled at Rashad, and pointed a firearm at Kinesha's vehicle. Kinesha heard three gunshots, her rear window shattered, and she felt pain in her upper right shoulder. She hit the accelerator while Rashad drove his own vehicle backwards down the street in front of her. Later, she found bullet holes in her headrest. She was treated at the scene for a gunshot wound to her shoulder.

¶ 9 On cross-examination, Kinesha testified that Rashad had already driven away when defendant said that he would be back. Her written statement to police did not mention that defendant was in the Montecarlo when it returned or that defendant pointed at Rashad and said, "That's him."

¶ 10 On redirect examination, Kinesha testified that defendant exited his vehicle after it turned from the alley onto Burnham. On recross-examination, she acknowledged that she did not include that information in her written statement.

¶ 11 Detective Ryan Miller testified that on July 20, 2014, he investigated a shooting near the 8600 block of Burnham, during which he spoke with Rashad and Kinesha. He observed Kinesha's aqua-colored vehicle on the 2700 block of 85th Street and a gray Chevrolet Montecarlo on the 8500 block of Muskegon Avenue. Rashad entered Miller's vehicle and stated he knew where the shooter lived. Miller drove to that location, which was later determined to be Griffin's home. At the police station, Rashad and Kinesha identified Griffin and defendant in photo arrays. On cross-examination, Miller testified that when he arrived at the crime scene, all the witnesses were sitting together in Rashad's vehicle.

¶ 12    The State entered several stipulations into evidence. If called, Chicago police officer Michael Gaines would testify that between 5:30 and 6 a.m. on July 20, 2014, Rashad flagged him down and identified a gray Chevrolet located on the 8500 block of Muskegon. Gaines placed his hand on the engine of the vehicle and found it to be warm. Evidence technician Michael Emmet would testify that he photographed an aqua-colored Hyundai, from which he recovered a fired bullet fragment, and a gray Chevrolet. Evidence technician Elizabeth Vera would testify that she performed a gunshot residue kit on the steering wheel of the gray Chevrolet. Forensic scientist Ellen Chapman would testify that the gunshot residue kit showed that the steering wheel contacted a gunshot residue related item or was in the environment of a discharged firearm. Chicago police officers Maraffino and Dent[5] would testify that they arrested defendant on August 13, 2014.

¶ 13    The defense called Kanye Smith-Wilkerson, who testified that she was at her residence on Burnham on July 19, 2014. Smith-Wilkerson saw defendant, whom she knew, "getting beat up" by two men and one woman on the street. Smith-Wilkerson broke up the fight and defendant went into her home with her. Ten to fifteen minutes later, while she and defendant were inside, Smith-Wilkerson heard gunshots. On cross-examination, Smith-Wilkerson testified that defendant and Griffin are friends, defendant drives a Montecarlo, and she went to court that day with defendant's mother.

¶ 14    The trial court found defendant not guilty of attempt first degree murder and guilty under a theory of accountability of aggravated battery with a firearm and aggravated discharge of a firearm in the direction of an occupied vehicle. In so doing, the court noted that defendant was

---

[5] Maraffino's and Dent's first names do not appear in the record.

"centrally involved" in bringing Griffin to the scene because the evidence established that defendant fought with Rashad, said that he would be back, and then returned with Griffin, who was armed. It concluded that defendant and Griffin had "the common design to return and exact some type of revenge and retribution" on those who had maltreated defendant.

¶ 15    At the hearing on defendant's motion for a new trial and arrest of judgment, he argued the State failed to prove his accountability beyond a reasonable doubt because no evidence showed a common scheme or design. Defendant asserted that Griffin's actions were not foreseeable because Griffin fired at Kinesha, with whom defendant had not argued, and no evidence showed that defendant knew Griffin had a firearm. With reference to the "sentencing schemes" of the offenses, the trial court granted defendant's motion in part and found him not guilty of aggravated battery with a firearm. Following a hearing, the court sentenced defendant to four years' imprisonment for aggravated discharge of a firearm in the direction of an occupied vehicle.

¶ 16    On appeal, defendant argues that the State failed to prove him guilty of aggravated discharge of a firearm under a theory of accountability where no evidence established a common scheme, design, or a shared criminal intent with Griffin, and Rashad's testimony was impeached concerning key aspects of defendant's involvement and conflicted with Kinesha's testimony.

¶ 17    In a challenge to the sufficiency of the evidence, the question on review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Harris*, 2018 IL 121932, ¶ 26. We do not retry the defendant or substitute our own judgment for the trier of fact's on matters of the weight of testimony, the resolution of conflicts in the evidence, and which

inferences to draw from the evidence. *Id.* Instead, we draw all reasonable inferences in the State's favor, and will reverse a conviction only if the evidence is "so improbable or unsatisfactory" that there remains a reasonable doubt as to the defendant's guilt. *Id.*

¶ 18 A person is guilty of aggravated discharge of a firearm in the direction of an occupied vehicle where he knowingly or intentionally "[d]ischarges a firearm in the direction of *** a vehicle he *** knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2014). Defendant does not challenge the sufficiency of the evidence regarding the underlying offense, but only argues that the State failed to prove beyond a reasonable doubt that he was guilty under a theory of accountability. A person is legally accountable for another's criminal conduct, where, with the intent to "promote or facilitate" the commission of an offense, the defendant "solicits, aids, abets, agrees or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2014).

¶ 19 Although mere presence is insufficient to establish accountability, a defendant need not actively participate in the commission of the offense to be held accountable for it. *People v. Taylor*, 164 Ill. 2d 131, 140 (1995). A defendant's intent to promote or facilitate an offense may be shown through evidence that the defendant either shared the intent of the principals or entered a common criminal design with them. *People v. Fernandez*, 2014 IL 115527, ¶ 13. The supreme court has explained that:

> "Under the common-design rule, if two or more persons engage in a common criminal
> design or agreement, any acts in the furtherance of that common design committed by
> one party are considered to be the acts of all parties to the design or agreement and all are

equally responsible for the consequences of the further acts." (Internal quotation marks omitted.) *Id.*

A factfinder "may infer accountability from 'the circumstances surrounding the perpetration of the unlawful conduct,' including 'the defendant's presence during the commission of the offense, the defendant's continued close affiliation with other offenders after the commission of the crime, the defendant's failure to report the incident, and the defendant's flight from the scene.' " *People v. Doolan*, 2016 IL App (1st) 141780, ¶ 43 (quoting *People v. Batchelor*, 171 Ill. 2d 367, 376 (1996)).

¶ 20    Here, the evidence viewed in a light most favorable to the State sufficed to establish that defendant had a common design with Griffin to commit the offense. Defendant had a "[h]ostile" interaction with Rashad inside the residence on Burnham, fought with Johnson and Rashad outside, and said that he would return. Defendant left in a gray Montecarlo, which Rashad, Kinesha, and Smith-Wilkerson all testified was his vehicle. Soon after, Rashad and Kinesha saw defendant's vehicle drive down Burnham. Defendant stopped near Kinesha's vehicle, and he and Griffin exited. Defendant identified Rashad to Griffin. Griffin then raised a firearm and pointed it in Rashad's direction. Kinesha and Rashad sped away as Griffin fired three gunshots, which struck Kinesha's vehicle. Thus, there was sufficient evidence to find defendant legally accountable for the shots fired by Griffin. See *id.* ¶ 46.

¶ 21    Nevertheless, defendant cites *People v. Taylor*, 186 Ill. 2d 439 (1999), for his contention that being in a vehicle with Griffin was insufficient to make him accountable for Griffin's conduct. In *Taylor*, the defendant was driving with his codefendant when he allegedly partially occupied both lanes of a road, forcing another vehicle to get close to a parked vehicle. *Taylor*,

186 Ill. 2d at 443. When the other vehicle's passengers exited to check for damage, the codefendant exited the defendant's vehicle and argued with them. *Id.* During the argument, the codefendant drew a firearm and shot at the other vehicle's passengers before driving away with the defendant. *Id.* The supreme court reversed the defendant's conviction, finding that he could not be held accountable for "an unforeseeable, spontaneous traffic altercation." *Id.* at 448.

¶ 22    In contrast to *Taylor*, here the evidence viewed in a light most favorable to the State shows that the shooting was not an "unforeseeable, spontaneous" incident. Defendant fought with Rashad on Burnham. He said that he would be back, and soon after, returned to the same location with Griffin, who carried a loaded firearm, which Griffin shot in Rashad's direction. Therefore, this situation was not akin to the defendant's in *Taylor*.

¶ 23    Defendant further argues that Rashad's testimony at trial was impeached and conflicted with Kinesha's testimony. Specifically, defendant asserts that (1) Rashad's testimony that defendant exited his vehicle and pointed Rashad out to Griffin was impeached by his written statement to police that did not include that information, (2) Rashad's testimony that Johnson fought with defendant and that defendant said he would be back conflicted with Kinesha's testimony that only Rashad fought with defendant and that Rashad had already left when defendant said he would return, (3) Rashad's testimony that he did not drink at the lake was impeached by his written statement to police in which he said he had one beer, and (4) due to Rashad's pending charge at the trial, he had a motive to curry favor with the State.[6] He further argues that Kinesha's testimony alone was insufficient to convict him because her written

_____

[6] Defendant also argues Rashad's testimony that, at the time of the incident, it was "just getting light out" conflicted with Kinesha's testimony that it was "bright daylight," and Rashad's testimony that defendant returned less than 10 minutes later conflicted with Kinesha's testimony that he returned 1 to 2 minutes later. However, this testimony was adduced on cross-examination as part of Griffin's case-in-chief and was not adopted by defendant's attorney.

statement did not include that defendant exited his vehicle when he returned, she did not ever state that defendant pointed at Rashad or said, "That's him," nor did she state that defendant knew Griffin had a firearm. Moreover, her testimony that defendant exited his vehicle when he returned conflicted with her written statement to police, which did not include that information.

¶ 24 We reiterate that it is the trier of fact's responsibility to assign weight to witness testimony, to resolve conflicts in the evidence, and to draw inferences from the evidence. See *Harris*, 2018 IL 121932, ¶ 26. Indeed, "[a] trier of fact is free to accept or reject 'as much or as little' of a witness's testimony as it likes." *People v. Rouse*, 2014 IL App (1st) 121462, ¶ 46 (quoting *People v. Logan*, 352 Ill. App. 3d 73, 81 (2004)). Here, the trial court heard all the evidence, including any perceived inconsistencies in Rashad's and Kinesha's testimonies, and found that defendant was legally accountable for the shooting because he had just gotten into a fight with Rashad while at the residence on Burnham, left in his vehicle, and then returned with an armed companion, who shot in Rashad's direction. Viewed in a light most favorable to the State, it was rational for the trial court to infer defendant's accountability for the shooting from these circumstances. Accordingly, we will not reverse his conviction. See *Harris*, 2018 IL 121932, ¶ 26.

¶ 25 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26 Affirmed.